[Civ. No. 1133. Fifth Dist. July 28, 1970.]

WILLARD W. SHEPHERD et al., Plaintiffs and Respondents, v. MILES & SONS, INC., et al., Defendants and Appellants.

8

**COUNSEL**

Booth, Mitchel, Strange & Willian and George C. Mitchel for Defendants and Appellants.

Wright, Wright, Tolton & Rice and Michael F. Dillon for Plaintiffs and Respondents.

## OPINION

**STONE, P. J.**—Defendants appeal from a judgment awarding to plaintiffs the sum of $29,179.03 and prejudgment interest.

This case arises from transactions among participants in a construction project. Guy F. Atkinson Company, prime contractor on a highway project, subcontracted with appellant Miles & Sons, Inc., a corporation,[1] to furnish fill from state-designated pits. Atkinson waived a performance bond by Miles upon the agreement of Miles to hold Atkinson harmless from liens or claims of third persons arising from project operations of Miles or its subcontractors. Miles subcontracted part of its work to Robert B. Kleppinger, who furnished a bond written by appellant General. Shepherd leased equipment, furnished supplies and did repair work for Kleppinger on this and other jobs.

During progress of the Guy F. Atkinson job, Shepherd sued Kleppinger for debts incurred on this job and on others as well. In connection with the action, Shepherd, on August 22, 1958, levied an attachment against funds owing to Kleppinger by Miles, and filed a stop notice against the Atkinson prime contract. The manager of Miles notified Shepherd that the levy had "caught some $34,600." He also told Shepherd that Atkinson was "on his back" because of the stop notice, and promised Shepherd that if he would withdraw the stop notice Miles would hold the amount attached until the outcome of the Shepherd lawsuit against Kleppinger. Shepherd then withdrew the stop notice, advising the proper state official that the release was given "for good and valuable consideration." Willard Shepherd testified that but for the Miles promise to hold the attached funds, he would not have released the stop notice.

On November 5, 1958, Miles delivered to the sheriff an "Answer to Garnishment," stating that Miles was indebted to Kleppinger in the sum of $34,620.46.

Kleppinger was represented by an attorney by the name of Popovich, who was also an accountant. Shortly after Shepherd filed the action against

---

[1]Miles & Sons, Inc. was dissolved during the period involved and a successor partnership was formed, which assumed the obligations and liabilities of the corporation. For convenience, we use the designation "Miles" throughout, and refer to the Shepherds in the singular, and to General Insurance Company of America as "General."

Kleppinger, and the attachment and stop notice had been filed, Popovich was hired to represent General as well as Kleppinger, and strange things began to happen. Although Miles and Kleppinger did not view Kleppinger in default in payment to creditors, and none of the creditors was demanding payment from Kleppinger or Miles, Popovich concluded that payment to 50 of Kleppinger's job creditors was overdue. Concluding this to be a threat to General's liability on the performance bond, Popovich instructed Miles to pay all 50 creditors except Shepherd out of the funds due Kleppinger from Miles. The debts amounted to $57,060.33, which Miles paid at the insistence of Popovich and General. Only $45,711.96 was due from Miles, but the balance of $11,348.37 was advanced by Miles and Atkinson, and charged as a loan to Kleppinger.

The important aspect of the transaction is not just that all creditors except Shepherd were paid, but that the $34,620.46 which Miles agreed to hold upon release of the stop notice and attachment was used to make the payment. Miles paid the Kleppinger creditors upon the direct representation by Popovich that General would not honor the Kleppinger bond if Miles did not pay all of the creditors. Popovich instructed Miles to make an amended answer to the garnishment, asserting that no money was due Kleppinger, which Miles did. In return, General executed a hold harmless agreement in favor of Miles, which provided in part: "We also agree to defend and save you harmless from any and all claims of whatever kind or character, of the Shepherd Machinery Co. (a Limited Partnership), arising out of the purported sale and/or lease of certain equipment to Mr. Kleppinger, and especially from all claims arising out of Action No. 707038 in the Superior Court of the State of California, in and for the County of Los Angeles, entitled 'Shepherd Machinery Co., a Limited Partnership, vs. Robert V. Kleppinger and Doe One, Doe Two and Doe Three', in the sum of $34,438.76."

Miles then notified Shepherd that General had given it a hold harmless agreement covering all claims arising from Shepherd's action against Kleppinger, up to the sum of $34,438.76, but only for the Miles job. Shepherd replied that he would look to Miles for the $34,620.46 "caught in the attachment" and which Miles agreed to hold pending outcome of the Shepherd vs. Kleppinger suit, and, further, that if Shepherd recovered a judgment against Kleppinger, Shepherd would look to Miles for any deficiency regardless of the origin of Kleppinger's debt, expecting to be paid from the $34,620.46.

Miles & Sons, Inc. dissolved on June 9, 1959, William W. Miles and Pat L. Nolet individually assuming its liabilities. On learning of the dissolution, Shepherd's attorney advised them that they personally would be

held responsible to Shepherd unless "some trust fund was established" in the sum of $34,620.46, provided, of course, that Shepherd prevailed in the lawsuit against Kleppinger.

In July 1959 Shepherd sued General on its bond, in the Los Angeles County Superior Court. The action was consolidated for trial with the action filed earlier by Shepherd against Kleppinger. Shepherd recovered judgment against Kleppinger in the sum of $74,196.03. The court determined that $45,017 of the total recovery arose from Kleppinger's operation on the Miles project, and awarded Shepherd that amount against General, payment to be applied to the judgment against Kleppinger. General satisfied the judgment against it, which was the amount due on the Miles-Atkinson project, leaving unsatisfied the sum of $29,181.03, being the amount of Kleppinger's debt incurred other than on the freeway job.

Shepherd made demand upon Miles for payment of the balance, and Miles' manager responded that their attorney had not been responsible for the delay, rather, Miles had been "after General for some time regarding the matter," in that General had given Miles a hold harmless agreement when Miles released the attached funds. He enclosed a copy of a letter written by their attorney to Mr. Popovich, representing General, which read, in part: "It is my understanding, both from your telephone call and the letter of Mr. Clayton of General Insurance Company, that this matter would be taken care of by General Insurance Company, and, in fact, it has acknowledged its obligation under the Hold Harmless Agreement with Miles & Son, and others.

"It is my opinion that the General Insurance Company has an obligation to satisfy the claim of Shepherd Machinery Company without subjecting Mr. Nolet or Mr. Miles, or any of the companies of Miles & Sons, to multiple litigation or harassment, or to take up the time of any of these individuals or companies in court appearances or in fending off the claims of Shepherd Machinery Company. Furthermore, it should not be the obligation of Miles & Sons to pay attorneys, such as our office, to spend time on this matter for them.

"Would you please see that the demand of Shepherd Machinery Company is satisfied at once, so that this matter may be ended."

Again, on August 23, 1962, Miles wrote Shepherd advising that its attorney "had a call from the attorney for General Insurance Company assuring them that they were going to take care of the Shepherd account." Nothing was done about it, and Shepherd filed this action January 14, 1963.

The first cause of action is against Miles and is predicated upon the theory that Miles became an involuntary trustee of the sum of $34,620.46

when it elected to hold the amount attached, promising to hold it for the benefit of Shepherd rather than transferring it to the sheriff. The second cause of action is against General, and is based upon the theory that the Miles-General hold harmless agreement is a third party beneficiary contract made expressly for the benefit of Shepherd.

The record clearly reflects an agreement between Miles and Shepherd, which Miles breached, and it likewise shows a tortious interference with the agreement by General's agent, Popovich, who induced Miles to breach the contract. The court, however, in accordance with the pleadings, decided the case on the theory of a constructive trust as to the $34,620.46 Miles agreed to hold until the outcome of the Shepherd-Kleppinger suit, and a third party beneficiary contract in the hold harmless agreement between General and Miles.

Appellants contend that Shepherd's action to recover from Miles is barred by Code of Civil Procedure section 542b, which provides that a garnishment expires or ceases to be of any force or effect after three years. The section also provides that the property levied on must be released from the operation of such attachment or garnishment at the end of three years if not sooner released or discharged. Appellants argue that since this action was commenced more than three years after the original levy of garnishment, any right respondents had to collect the sum garnisheed had elapsed.

Section 542b is not applicable because the garnishment was released and superseded by a personal agreement between Shepherd and Miles. When the relationship changed, the statute of limitations applicable to a garnishment was supplanted by the statute of limitations in contract. The agreement was that Miles would hold the money until the outcome of the Shepherd-Kleppinger lawsuit; until then there was no way for the parties to know whether Shepherd was entitled to any part of the $34,620.46. Thus the statute of limitations did not begin to run until disposition of that case. The judgment was entered April 23, 1962, and this action was commenced January 14, 1963, well within the statute of limitations.

Appellants argue that Miles could not have been a constructive trustee of the $34,620.46 because there was no trust res in being at the time the agreement was made. As we understand appellants' argument, it is twofold, first, that there was never any money, no tangible res, in the hands of Miles, only a bookkeeping credit, and second, any credit that had accumulated was subject to the claims of 50 creditors, other than Shepherd, who furnished labor or materials to Kleppinger for this job.

As to the first proposition, we think appellants take too narrow a view of the term "res." It is true that a literal interpretation signifies a particular,

identifiable, physical object, but such literalness fails to meet the realities of today's business world. Confining "res" to such narrow compass would preclude transfers of book accounts, including bank deposits and other credits, to a trust account. It is commonplace to establish a trust fund by bookkeeping entries which transfer ownership or custody of money without effecting a physical transfer of currency. Miles' books reflected a credit in the name of Kleppinger, which was garnisheed, and it was this credit that Miles agreed to "hold" until the Shepherd-Kleppinger lawsuit was completed. We deem this a sufficiently identifiable res, both in logic and in law, to support a finding of a constructive trust.

Appellants' other argument on this point is that it was revealed later that other creditors of Kleppinger also had claims to be paid out of amounts due Kleppinger which, if offset against the amount due, would have wiped out Kleppinger's book credit. But none of these creditors had presented a claim to Miles before Shepherd's garnishment was levied and, as Miles' accountant testified, the books reflected the amount garnisheed was due Kleppinger. *At the time* the garnishment was levied and the stop notice filed, the garnishment did "catch" $34,620.46. The release of the levy and withdrawal of the stop notice constituted valid consideration for the promise of Miles to hold the amount garnisheed until the outcome of the Shepherd-Kleppinger lawsuit.

■ Appellants contend that proof of the intent of the parties to create a trust is not supported by the evidence. Miles agreed to hold the funds until the outcome of the Shepherd-Kleppinger suit and, although the word "trust" was not used by the parties, the intent found by the trial court is readily inferred from the language used by the parties in arranging for a release of the stop notice and the levy of garnishment. The inference is buttressed by the conduct of the parties. The garnishment for the benefit of Shepherd was troublesome to Miles, but of greater moment to Miles was the stop notice which irritated Atkinson. It must be remembered that Atkinson waived a performance bond from Miles, so that the stop notice had far-reaching implications. To remove this embarrassment between Miles and his prime contractor, Atkinson, Miles agreed to hold the funds in lieu of garnishment, in return for the release of the stop notice and release of the levy. There is substantial evidence to support the finding of the trial court that the effect of the agreement was to constitute Miles a constructive trustee of the funds it agreed to hold.

■ The judgment against General is predicated upon the theory of a third party beneficiary contract. Miles violated its agreement with Shepherd at the urging, if not under threat, of Popovich, who was acting as

General's attorney and who arranged for the hold harmless agreement by his principal, General. Appellants seize upon this circumstance as the basis for their argument that there was no intent on the part of Miles or General to benefit Shepherd by the hold harmless agreement.

The principles governing the law of third party beneficiary contracts are enunciated in *Shell* v. *Schmidt,* 126 Cal.App.2d 279, at page 290 [272 P.2d 82], as follows: "Under section 1559 of the Civil Code, embodying general common law principles, a third party beneficiary may maintain an action directly on such a contract. [Citation.] The promise in such a situation is treated as having been made directly to the third party. [Citation.] It is no objection to an action by the third party that the contracting party . . . could also sue upon the contract for the same breach. [Citation.] Of course, the beneficiary must be more than incidentally benefited by the contract. An incidental beneficiary cannot successfully maintain an action. [Citation.] Whether the beneficiary is or is not an incidental one, or a beneficiary for whose express benefit the contract was entered into, is a question of construction. [Citation.] It is not required that the third party beneficiary be specifically named as a beneficiary. All that section 1559 requires is that the contract be 'made expressly for the benefit of third parties,' and 'expressly' simply means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.' [Citation.]"

With these principles in mind, we turn to the hold harmless agreement. Its primary purpose was to assure payment to Shepherd if he recovered a judgment against Kleppinger. The agreement specifically referred to "all claims arising out of Action No. 707038 in the Superior Court of the State of California, in and for the County of Los Angeles, entitled 'Shepherd Machinery Co., a Limited Partnership, vs. Robert V. Kleppinger . . . in the sum of $34,438.76."

It is clear enough from the agreement that if Shepherd lost the case, he was entitled to nothing from Miles or, in turn, from General. It is equally clear, on the other hand, that if Shepherd won his suit, thus obligating Miles, General would hold Miles harmless up to the sum of $34,438.76. Accordingly, Shepherd was the real beneficiary, for if he won his suit against Kleppinger he was assured payment from either Miles or General.

In point is the language of the Supreme Court in *Lucas* v. *Hamm,* 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685]: "Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent. [Citations.] No specific manifestation by the promisor of an intent to benefit the third person is required."

■ Finally, unlike appellants, we see nothing wrong with the relief granted. Shepherd's long pending action against Kleppinger in Los Angeles County was consolidated for trial with Shepherd's action against General on the Kleppinger bond. Shepherd recovered a large judgment in his principal action against Kleppinger for the Atkinson job and other debts as well. Since General's bond covered only the Atkinson job, Shepherd's Los Angeles County Superior Court judgment against General was limited to debts emanating from the Atkinson job. This left unsatisfied Shepherd's judgment based upon other debts of Kleppinger, which Shepherd sought to satisfy from the $34,438.76 Miles had agreed to hold. Shepherd filed an action in the Merced County Superior Court against Miles, predicated upon its agreement to hold $34,438.76, and in the same cause alleged a cause of action against General on its hold harmless agreement with Miles. To join causes of action of this character against Miles and against General was permissible and, from the court's point of view, desirable, in order to clear up the entire matter in one lawsuit, rather than two.

The trial court very carefully guarded against a double recovery by providing that: "In the event of payment of the judgment or any portion thereof against defendant General Insurance Ccmpany of America, appropriate credit shall be applied upon the judgment against defendants Miles & Sons, Inc., William W. Miles and Pat L. Nolet.

"In the event of payment of the judgment or any portion thereof against defendants Miles & Sons, Inc., William W. Miles and Pat L. Nolet, appropriate credit shall be applied upon the judgment against defendant General Insurance Company of America."

General seems to take the position that even though the hold harmless agreement was a third party beneficiary contract, it is nevertheless a guaranty and Shepherd should have been required to exhaust his remedies against Miles as a condition precedent to a judgment against General. In *Nomellini Constr. Co.* v. *Harris,* 272 Cal.App.2d 352 [77 Cal.Rptr. 361], Nomellini Construction filed an action against Paul O. Harris, a subcontractor, for failure to perform a construction contract. Harris cross-complained against Hurricane Steel Industries, Inc., alleging that his failure to perform was caused by Hurricane's breach of contract to supply him material. Nomellini was not a party to the cross-complaint between Harris and Hurricane, yet the court, finding that Hurricane was at fault, entered a judgment in favor of Nomellini and against Hurricane, whom Nomellini had not sued. The reviewing court said, at page 359: "The court's findings are that the failure of Hurricane to supply the correctly designated steel to Harris was the sole cause of Harris' default on the Nomellini subcontract; it, therefore, seems that equitable principles were correctly observed

■

by the trial court in telescoping the claims and permitting a direct judgment in favor of Nomellini against the party whose default required Nomellini to expend $11,712.16 to acquire what Harris had promised in his sub-contract and what Hurricane had in turn promised Harris."

The Court of Appeal based its holding largely upon a statement found in 27 American Jurisprudence, Second Edition, Equity, section 46, page 568: "Undoubtedly, equity favors the prevention of a multiplicity of actions."

In the case at bench, the hold harmless agreement, although primarily a guarantee for the protection of Miles, was also a third party beneficiary contract inuring to the benefit of Shepherd. The principle of equity set forth above justifies the provisional judgment entered.

The judgment is affirmed.

Gargano, J., concurred.