[Nos. A073793, A075276, A076590. First Dist., Div. Five. Aug. 11, 1997.]

JUDY ANDERSON et al., Plaintiffs and Appellants, v.
DELOITTE & TOUCHE LLP, Defendant and Respondent.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, parts I, II, IIIB, IV and the Conclusion of this opinion are not certified for publication.

COUNSEL

The Minton Firm, Michael Harry Minton, Krause & Kalfayan, James C. Krause, Furth, Fahrner & Mason, Craig C. Corbitt and David A. Hoskins for Plaintiffs and Appellants.

McCutchen, Doyle, Brown & Enersen, Donn P. Pickett and Karen Kennard for Defendant and Respondent.

## OPINION

**HANING, J.**—In this consolidated appeal, plaintiffs and appellants Judy Anderson et al.[2] appeal a summary judgment in favor of defendant and respondent Deloitte & Touche LLP in appellants' action for intentional and negligent misrepresentation, and violation of California securities statutes.

### BACKGROUND

Vintech, Inc., is a California corporation specializing in research, analysis, acquisition, management and development of agricultural property. Its sole owner is Donald D. Bade (Bade). Between April 1988 and May 1990 Vintech, Inc., and Bade (collectively, Vintech) sought investors for four limited partnerships of which they were the general partners. The objectives of the limited partnerships were to (1) purchase four existing wineries: Lyeth, Domaine Laurier, Mazzocco, and Jekel; (2) generate cash from operating the wineries; and (3) realize capital appreciation upon sale of the wineries. Minimum investment in a limited partnership unit was $25,000.

Vintech made information and disclosures regarding the limited partnerships available to prospective investors by way of a confidential offering memorandum (COM). The COM's stated they were prepared by Vintech's attorneys, and that Vintech retained respondent, an accounting firm, to prepare financial statements and tax returns for the partnerships. Each COM contained financial projections or forecasts for a six-year period after formation of the partnership. A summary of significant forecast assumptions and accounting policies accompanied the forecasts, which projected a return of 16 to 19 percent over the six-year period. Each COM also contained several caveats that the investment involved a high degree of risk and should be made only by investors who could afford a total loss of their contributions. The Mazzocco and Jekel COM's included an "Independent Accountants' Report" (IAR) prepared by respondent which states, inter alia, that respondent reviewed the forecasted income tax basis statements of income, expenses, partners' capital and cash flows for each of the years included in

---

[2]Plaintiffs and appellants consist of Judy Anderson, Donna Berchtold, Lester Berchtold, James Stack, I. Joseph Shyne, Michael P. Grossman, and Advanced Web Graphics, Inc., individually and on behalf of a class consisting of all persons who purchased or hold legal or beneficial limited partnership interests in Lyeth Winery Ltd. (Lyeth), Domaine Laurier Partners (Domaine Laurier), Mazzocco Winery Partners (Mazzocco), and Jekel Winery Partners (Jekel). The class is comprised of approximately 545 investors.

the economic forecasts of Mazzocco and Jekel. The IAR's further state that the review was "made in accordance with the standards for an examination of [a forecast] established by the American Institute of Certified Public Accountants (AICPA)," and that "[i]n our opinion, the accompanying forecast is presented in conformity with guidelines for presentation of a forecast established by the [AICPA], and the underlying assumptions provide a reasonable basis for [management's] forecast."

Between December 1990 and May 1991 all four limited partnerships, as well as Vintech, Inc., and Bade, filed chapter 11 bankruptcy petitions.

Appellants are purchasers of limited partnership interests who lost their investments when the partnerships failed. They allege generally that respondent knew, but failed to disclose in the COM's that the partnerships would be required to incur significant debt to continue in business and that the necessary loans were unavailable, and therefore the Mazzocco and Jekel forecasts had no reasonable basis in fact. They also allege that respondent continued to participate in partnership offerings even though it was aware of the lack of funding, marketing difficulties, and management problems of the first partnership, and that they relied on the COM's in deciding to invest.

Appellants also allege that respondent aided, abetted and conspired with Vintech in the latter's fraud, breach of fiduciary duty, and violation of state securities laws.

## DISCUSSION

### I, II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### III

Appellants next contend triable issues of material fact exist in each of their causes of action, and thereby preclude summary judgment.

Summary judgment is properly granted if the record reveals no triable issues of material fact, and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) (1) Defendants moving for summary judgment meet their burden of negating the plaintiff's action by establishing a complete defense thereto, or showing that one or more elements of the cause of action cannot be established. (*McCarthy* v.

*See footnote 1, *ante*, page 1468.

*Fletcher* (1989) 207 Cal.App.3d 130, 138 [254 Cal.Rptr. 714].) The burden then shifts to the plaintiff to set forth specific facts showing the existence of a triable issue. (§ 437c, subd. (*o*)(2).) Summary judgments are reviewed de novo. (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].)

Appellants' theories of recovery are dependent upon their ability to establish either fraud or negligent misrepresentation. However, the causes of action for negligent misrepresentation are based on respondent's IAR's and confined to the investors in Mazzocco and Jekel, which are the only two limited partnerships that disseminated respondent's report in their COM's.

## A.

### The Mazzocco and Jekel Offerings

Appellants contend there is a triable issue of material fact concerning respondent's knowledge of false and misleading statements in the Mazzocco and Jekel COM's. Appellants refer to respondent's statements in its IAR's that it examined the Mazzocco and Jekel forecasted balance sheets and income tax basis statements of income, partners' capital and cash flows for the forecasted years in accordance with the American Institute of Certified Public Accountants (AICPA) standards for examination of prospective financial statements, and that the underlying assumptions provide a reasonable basis for management's forecast.

### 1. Fraud

■ The elements of intentional misrepresentation, or actual fraud, are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762 P.2d 46] (*Molko*).)

In support of respondent's motion for summary judgment, Michael Rudy, respondent's engagement partner responsible for examination of the forecast material contained in the COM's, declared that the Mazzocco and Jekel forecasts were prepared by Vintech personnel, not respondent; that respondent examined the forecasts according to the AICPA guidelines governing such examinations; that respondent concluded the forecast was presented in conformity with those guidelines and that the assumptions underlying the forecast provided a reasonable basis for the forecast at the time of the

examination; that respondent had no knowledge that any assumptions on which the forecast was based were false; and that respondent's report contains no misstatements or omissions.

Respondent also supported its motion with AICPA guidelines for prospective financial statements. The guidelines state that a prospective financial statement, including the underlying assumptions, is the responsibility of the entity's responsible party. "Entity" is defined as any unit for which financial statements could be prepared in accordance with generally accepted accounting principles, such as a partnership. "Responsible party" is the person, usually management, responsible for the assumptions underlying the prospective financial statement. The guidelines further state that an accountant engaged to examine a prospective financial statement "should evaluate support for assumptions," and can conclude the assumptions are suitably supported if the preponderance of information, i.e., the weight of available information, supports each significant assumption. In evaluating the support for assumptions, the accountant should consider "whether sufficient pertinent sources of information about the assumptions have been considered." Sources might include government and industry publications, economic forecasts, existing and proposed legislation, changing technology, and the entity's budgets, sales records, and debt agreements.

Appellants opposed respondent's motion principally with the declaration of Mike Fisher, a certified public accountant with substantial accounting experience in the California premium wine industry and degrees in both enology and accounting. He declared that he reviewed the forecasted financial statements and respondent's IAR's, respondent's supporting work papers for its reports, and depositions and declarations of respondent's and Vintech's personnel. He opined that respondent not only failed to conduct its examination of the forecasts according to relevant AICPA guidelines, but that its accounting procedures "were so deficient as to constitute an extreme departure from the applicable accounting standards." He further declared that under AICPA guidelines an accountant should consider, inter alia, sales backlog records, debt agreements, market surveys, industry statistics, and trends and patterns developed from an entity's operation history in evaluating the support for assumptions. He stated that respondent violated these guidelines in its Mazzocco and Jekel reports. In Fisher's opinion, respondent should have verified the forecasts' assumptions that the partnerships would secure certain specified financing by independently investigating lenders and the current financing market. Instead, according to its work papers respondent relied only on general partner Bade's representations that necessary future financing was available. Fisher also declared that respondent's work papers do not mention independent research in the marketing and demand of

Mazzocco and Jekel wines to support their sales assumptions, but again rely solely on Bade's representations of aggressive marketing and increased sales staff.

■ The requisite state of mind, or scienter, for actual fraud or intentional misrepresentation is disbelief in the truth of the statement, i.e., *knowledge of falsity*. (*Molko, supra,* 46 Cal.3d at p. 1108.) Assuming that respondent's statement in the COM's that "the underlying assumptions [for the forecasted balance sheets] provide a reasonable basis for [management's] forecast" was incorrect, Fisher's declaration does not state that respondent made this misrepresentation *knowing* it was not true, or that respondent did not believe the representation to be true. As we understand their argument, appellants claim that Fisher's opinion regarding respondent's "extreme deviation" from AICPA standards raises a question that respondent made representations about forecasts without first checking the facts upon which its representations were based, i.e., that it didn't do its homework. This constitutes a claim of negligent misrepresentation rather than an intent to deceive, which is the basis of actual fraud. (See, e.g., *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487-488 [275 P.2d 15] (*Gagne*); 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 682-683, pp. 140-142; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 704, pp. 805-806.)

## 2. *Negligent Misrepresentation*

Negligent misrepresentation is the assertion of a false statement, honestly made in the belief it is true, but without reasonable ground for such belief. (Civ. Code, §§ 1572, subd. 2, 1710, subd. 2; *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-408 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*).) ■ "[T]he broad statements that 'scienter' is an element of every cause of action for deceit, and that an 'intent to deceive' is essential, are untrue, since neither is a requisite of negligent misrepresentation. [Citations.]" (5 Witkin, Summary of Cal. Law, Torts, *supra*, § 722, p. 821.)[4]

■ "Under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is 'not a casual expression of belief' but 'a deliberate affirmation of the matters stated,' it may be regarded as a positive assertion

---

[4]Both parties rely exclusively on federal cases based on federal, as opposed to California, law in making their respective arguments. Federal precedent may be appropriate in the absence of existing state law on an issue, but California has an existing body of law on the tort of negligent misrepresentation. "In California, the elements of the misrepresentation torts (which are also denominated forms of 'deceit') are prescribed by statute ([Civ. Code,] §§ 1572; 1710) and our common law tradition." (*Bily, supra,* 3 Cal.4th at p. 414.) Therefore, we rely on California law in our analysis.

of fact. [Citation.] Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact. [Citations.]" (*Bily, supra,* 3 Cal.4th at p. 408; see also *Gagne, supra,* 43 Cal.2d at p. 489; *Cohen v. S & S Construction Co.* (1983) 151 Cal.App.3d 941, 946 [201 Cal.Rptr. 173].)

■ The liability of accountants to third parties, i.e., parties other than their actual clients, for negligent misrepresentation in connection with the preparation of audit reports is set forth in *Bily. Bily* adopted the position of Restatement Second of Torts section 552, subdivision (2), as summarized in the jury instruction *Bily* fashioned for trial courts in such cases: " 'The representation must have been made with the intent to induce plaintiff, or a particular class of persons to which plaintiff belongs, to act in reliance upon the representation in a specific transaction, or a specific type of transaction, that defendant intended to influence. Defendant is deemed to have intended to influence [its client's] transaction with plaintiff whenever defendant knows with substantial certainty that plaintiff, or the particular class of persons to which plaintiff belongs, will rely on the representation in the course of the transaction. If others become aware of the representation and act upon it, there is no liability even though defendant should reasonably have foreseen such a possibility.' " (*Bily, supra,* 3 Cal.4th at p. 414.)

■ We conclude that appellants have raised a triable issue concerning the reliability of respondent's IAR's through Fisher's declaration in opposition to respondent's motion for summary judgment. If the acts or conduct of a professional accountant performed in preparation for an audit or representation fall below the applicable standard of care for the profession, in that the accountant failed to examine or acquire the necessary information required to support the accountant's professional opinion disseminated to potential investors, the opinion is made without a reasonable ground for believing it to be true. (See *Gagne, supra,* 43 Cal.2d at pp. 488-489.) When a statement, although in the form of an opinion, constitutes " 'a deliberate affirmation of the matters stated' " (*Bily, supra,* 3 Cal.4th at p. 408, citing *Gagne, supra,* 43 Cal.2d at p. 489), as occurred here, "it may be regarded as a positive assertion of fact." (*Bily* at p. 408.)

■ The next question is whether appellants presented a triable issue of whether respondent knew with substantial certainty that appellants, or the particular class of persons to which they belong, would rely on the IAR's in the course of the transaction. The answer to that inquiry requires analysis of the circumstances surrounding the preparation of the IAR's.

In *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901] (*Roberts*) a law firm prepared an opinion letter for its client for delivery to a prospective lender. When the client defaulted on the loan, the lender sued the attorneys alleging that the loan was extended on the basis of erroneous information in the opinion letter. In holding that the allegation in the lender's complaint that the attorneys knew and understood that the opinion letter was to be shown to the lender to induce it to make the loan stated a cause of action, the court stated: "[A] legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." (*Id.* at p. 111.)

In *Soderberg* v. *McKinney* (1996) 44 Cal.App.4th 1760 [52 Cal.Rptr.2d 635] (*Soderberg*), plaintiff trustee was contacted by a mortgage broker to invest in a second deed of trust on residential property. Plaintiff did so in reliance on an appraisal prepared under an agreement between the appraiser and the mortgage broker. After the borrowers defaulted on the deeds of trust, plaintiff brought an action against the appraiser for negligent misrepresentation of the property's value.

*Soderberg* reversed a summary adjudication in favor of the appraiser, concluding that the appraiser's knowledge of the potential investors by name or specific identity was not a prerequisite to bringing the action. It was sufficient that the appraiser supplied the information for repetition to a certain group or class of persons. It further concluded the appraiser could not establish as a matter of law that he knew the appraisal would be used solely by the mortgage broker, because he knew that the particular class of persons to which plaintiff belonged—potential investors contacted by the mortgage broker—would rely on his report for their investment decisions.

This case is comparable to *Roberts* and *Soderberg*. There is ample evidence to support a finding that respondent knew its reports were not limited to Vintech's internal or personal use, but were to be included in the COM's and thus communicated to potential investors in the Mazzocco and Jekel limited partnerships. The forecast and underlying assumptions to which the IAR's refer are designed for the specific purpose of attracting investors in the limited partnerships, i.e., to induce reliance, and cannot reasonably be understood to have any other purpose.

As we noted earlier, in order to prevail on summary judgment respondent had to negate appellants' action either by establishing a complete defense or by showing that one or more of its elements did not exist. Respondent

asserted no affirmative defense, and the record demonstrates triable issues of fact concerning the falsity of the IAR's and respondent's intent to induce reliance.

"Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. [Citations.]" (*Alliance Mortgage Co.* v. *Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601].) Except for " 'rare' " cases where " 'the undisputed facts leave no room for a reasonable difference of opinion,' " whether the plaintiff's reliance is reasonable is a question of fact. (*Ibid.*)

Respondent's IAR's accompanied only the Mazzocco and Jekel COM's, and investors therein were instructed not to execute any investment documents until they had reviewed the COM's. The subscription agreements contain a paragraph acknowledging that "I received and reviewed the [COM] . . . [and] have not relied upon any information concerning the offering, written or oral, other than that contained in such documents." Several appellants testified at their depositions that they relied on the IAR's in making their investment decisions. Respondent has not negated the element of reliance by these investors.

However, the IAR's are specific only to Mazzocco and Jekel, and not to any other entity. Appellants have presented no reliable evidence that investors in the Lyeth and Domaine Laurier partnerships could reasonably have relied on the Mazzocco and Jekel IAR's in making their investment decisions. Consequently, any liability of respondent for negligent misrepresentation reaches only investors in the Mazzocco and Jekel entities. Respondent has negated the element of reliance by investors in Lyeth and Domaine Laurier.

### B.

*Conspiracy in All Offerings**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante*, page 1468.

## CONCLUSION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Peterson, P. J., and Jones, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 19, 1997. Baxter, J., did not participate therein.

---

*See footnote 1, *ante*, page 1468.