Filed 9/24/14  Certified for Publication 10/14/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RON WILLEMSEN, | |
| Plaintiff and Appellant, | G050075 |
| v. | (Super. Ct. No. CIVRS912024) |
| ANDREW P. MITROSILIS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Ben T. Kayashima, Judge.  Affirmed.

Law Offices of Eric Michael Papp and Eric Michael Papp for Plaintiff and Appellant.

Garrett & Tully, Ryan C. Squire and Scott B. Mahler for Defendants and Respondents.

\*          \*          \*

Plaintiff and appellant Ron Willemsen, a purchaser of vacant land, sued various parties involved in the sale of the land, including defendant and respondent AppraisalPacific, Inc., the appraisal company hired by Willemsen's lender. AppraisalPacific, Inc. and its individual appraisers, codefendants and respondents Andrew P. Mitrosilis and Kraig S. Takacs (collectively, the AppraisalPacific Defendants), filed a motion for summary judgment, in which they asserted that Willemsen's negligent misrepresentation cause of action against them failed as a matter of law. The court granted the motion and Willemsen appeals.

We affirm the summary judgment. Willemsen failed to raise a triable issue of material fact to show the AppraisalPacific Defendants intended to supply information to him to influence his decision whether to buy the property. We also hold the trial court did not abuse its discretion in denying Willemsen's request for leave to file an amended complaint to assert a cause of action for breach of third party beneficiary contract.

I

FACTS

In his first amended complaint, Willemsen alleged as follows: On February 27, 2007, he entered into a written contract to purchase 4.83 acres of vacant land in San Bernardino County from Avista Development, LLC (Avista). Real estate broker Nicholas Quackenbos, his partner Richard Bell, and their partnership, Quackenbos-Bell Commercial Real Estate (collectively, the Quackenbos-Bell Defendants), were the dual agents of Willemsen and Avista with respect to the sale. Willemsen asserted that the Quackenbos-Bell Defendants failed to properly draft the purchase agreement so as to correctly articulate his contingencies, passed along material misstatements without investigation, and made material misstatements of their own. In so doing, he said, they breached their fiduciary duties to him and committed negligence, with the result that he

2

was left with a piece of property that was not suitable for his intended purpose.[1]

In addition to the foregoing, Willemsen asserted a cause of action for negligent misrepresentation against the AppraisalPacific Defendants. He alleged that: (1) his lender had hired them to perform an appraisal of the property; (2) they knew he, or the class of persons to which he belonged, would rely on the appraisal to determine the value of the property; and (3) they intended for him to rely on the valuation in obtaining financing from the bank. Willemsen further alleged that the property value stated in the appraisal was in excess of the true value of the property, that the AppraisalPacific Defendants had failed to account for either an earthquake fault line running across the property or the loss of land that would be suffered when a local government entity ran a planned road over the property, and that his reliance on the appraisal was a substantial factor in causing him monetary harm.

In response, the AppraisalPacific Defendants filed a motion for summary judgment. They asserted that: (1) by June 2007, Willemsen's contingencies under the purchase agreement had expired; (2) on July 3, 2007, his lender, Farmers and Merchants Bank (the bank), retained the AppraisalPacific Defendants to perform an appraisal of the property in connection with its underwriting of the loan; (3) on July 25, 2007, the appraisal was issued; and (4) on August 15, 2007, the escrow closed.

The AppraisalPacific Defendants claimed Willemsen's cause of action for negligent misrepresentation failed as a matter of law because: (1) Willemsen was not the intended beneficiary of their appraisal; (2) Willemsen could not establish that he justifiably relied on the appraisal; and (3) neither they nor the lender intended the appraisal to influence Willemsen's decision to buy the property.

---

[1] Willemsen represents that he prevailed at trial as against the Quackenbos-Bell Defendants, though no copy of a judgment is provided in the joint appendix. In any event, the liability of the Quackenbos-Bell Defendants is not at issue on appeal.

The trial court granted the motion. The court's reasoning is reflected in the reporter's transcript. The court stated the evidence showed that the appraisal was prepared for the bank's underwriting purposes and that Willemsen was only an incidental beneficiary with respect to the appraisal. It further stated Willemsen had offered no evidence sufficient to raise a triable issue of material fact to the contrary. The court also acknowledged the AppraisalPacific Defendants' argument that Willemsen could not have relied on the appraisal, though the court did not specifically state whether it was basing its decision in any part on that argument.

II

DISCUSSION

A. *SUMMARY JUDGMENT:*

*(1) Introduction—*

"Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his [or her] favor on a cause of action . . . or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff 'contend[ing]. . . that there is no defense to the action,' a defendant 'contend[ing] that the action has no merit' (*ibid.*). The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c))." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

"[I]n moving for summary judgment, a 'defendant . . . has met' his [or her] 'burden of showing that a cause of action has no merit if' he [or she] 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts

4

exists as to that cause of action or a defense thereto. . . .'  (Code Civ. Proc., § 437c, subd. (*o*)(2).)"[2]  (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

On review of a summary judgment, we "examine the record de novo and independently determine whether [the] decision is correct.  [Citation.]"  (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1149.)

### (2)  Background—

### (a)  Contingency provisions

Willemsen's contingencies were set forth in sections 5 and 9 of the purchase agreement.  They included a financing contingency and various contingencies designed to enable Willemsen to determine the suitability of the property for his intended purpose.  He had the right, for example, to perform physical and soils inspections, to obtain a survey of the property, to review title, and to review certain government approvals and other documentation.

As stated in purchase agreement section 5.2, Willemsen had 60 days in which to obtain his financing.  Section 9 provided contingency periods of varying lengths with respect to his inspection rights.  For example, section 9.1, subdivision (b) provided Willemsen with a physical inspection contingency expiring 10 days after the later of the date of the purchase agreement or the date of his receipt of a property information sheet.  Section 9.1, subdivision (e) allotted Willemsen 60 days to investigate applicable governmental approvals.  Section 9.1, subdivision (d) provided a soils inspection period.  The copy of the purchase agreement found in the record contained a typed in figure that appeared to originally read "60" days, but was lined out by hand.  The figure "90" was written in by hand and also lined out.  The figure "60" was also written in hand.  It appeared to have been initialed by only one party.  The initials appeared to be "RW."  At deposition, Willemsen testified, with respect to the lined out numbers, that the parties

---

[2]        See now Code of Civil Procedure section 437c, subdivision (p)(2).

5

ultimately settled on a 60-day soils inspection period. In all, sections 5.2 and section 9.1, subdivisions (d) and (e), provided the longest contingency periods, of 60 days.

In support of their motion for summary judgment, the AppraisalPacific Defendants asserted that the contingency periods had expired no later than June 2007. Willemsen disputed this. In opposing the motion, he said that he had testified at deposition that the contingency periods and the closing date had been extended many times. In support of this assertion, he cited three things. First, he cited a portion of his deposition testimony wherein he stated it was very important that he obtain the approval of the City of San Bernardino to use the property as a recycling facility and that he thought he had disapproved of the property based on the governmental approvals contingency. He was uncertain whether he had put anything in writing, but believed he had communicated his disapproval to Bell, "because the closing date got extended several times[.]" Second, he cited a portion of the deposition transcript wherein he acknowledged signing amended escrow instructions that extended the date of close of escrow to August 10, 2007. Third, Willemsen cited the amended escrow instructions themselves, which stated that the close of escrow was extended to August 10, 2007 to permit him to complete loan processing requirements.

So, in his opposition, Willemsen showed that the governmental approvals contingency period and the financing contingency period may have been extended. He did not, however, show that his right to reject the property on any ground other than his inability to satisfy himself as to governmental approvals or his inability to obtain satisfactory financing had been extended.

*(b) Appraisal documentation*

In support of their motion for summary judgment, the AppraisalPacific Defendants provided a copy of the bank's July 3, 2007 request for appraisal services. On the first page, the request named Willemsen on the subject line, and on the last page, it identified the bank as the client and as the intended user of the appraisal.

6

The AppraisalPacific Defendants also provided a copy of the appraisal report, which identified Willemsen as the borrower.  In the introduction, the appraisal report stated:  "The function of this appraisal report is to provide Farmers and Merchants Bank with a Summary Appraisal Report."  It further stated:  "The intended use of this appraisal is to assist Farmers and Merchants Bank in analyzing a new loan for the subject property.  The intended users of this appraisal are Farmers and Merchants Bank and/or its designated representatives."  Another portion of the report said:  "The report may not be used for any purpose by any person other [than] the party to whom it is addressed without the written consent of the appraiser and the appraiser specifically disclaims any liability to such unauthorized third parties."  The appraisal report was addressed to the bank.

In addition, the appraisal report indicated that the bank had provided a copy of the February 27, 2007 purchase agreement.  The appraisal report opined that the pending purchase price of $1,600,000 was under market and that the property value was $1,780,000.

*(3)  Analysis—*

The court in the matter before us stated that it had considered three cases in making its decision—*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089 (*Nymark*), *Soderberg v. McKinney* (1996) 44 Cal.App.4th 1760 (*Soderberg*), and *Mariani v. Price Waterhouse* (1999) 70 Cal.App.4th 685 (*Mariani*).  In *Nymark*, the court, in addressing a lender's liability for negligence, held that a lender owed no duty of care to a borrower in appraising the borrower's residence to determine whether the residence would be adequate security for a loan.  (*Nymark*, *supra*, 231 Cal.App.3d at pp. 1092-1093, 1095-1096, 1100.)  In so concluding, the court applied the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647.  (*Nymark*, *supra*, 231 Cal.App.3d at pp. 1098-1100.)  In applying those factors, the court stated, inter alia:  "One who seeks financing to purchase real property has many means available to assess the property's value and condition, including comparable sales, advice from a realtor,

7

independent appraisal, contractors' inspections, personal observation and opinion, and the like. . . .  Stated another way, the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain, i.e., not to insure the success of the investment.  [Citation.]" (*Id.* at p. 1099; accord, *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 607 (*Graham*) [fraud or deceit context].)

Here, Willemsen had the opportunity during the various contingency periods to make desired inspections and to examine documents in order to determine the suitability of the property.  However, for the most part, he chose not to avail himself of that opportunity.  At his deposition he acknowledged, for example, that while he had looked at the property before he signed the purchase agreement, he did not perform any inspections afterwards, except for obtaining a survey.  Furthermore, had Willemsen desired an appraisal for his own evaluation in making the decision to purchase, he could have negotiated an appraisal contingency and ordered an appraisal for his own use.  As it was, instead of doing investigations that would help him determine whether the property suited his needs, he chose to rely on the bank's willingness to make him a loan as a sufficient indicator of the suitability of the property.  However, the bank's determination that the collateral was of adequate value for its purpose was not a guarantee that the property was suitable for Willemsen's needs.

Willemsen maintains that we should not rely on *Nymark*, *supra*, 231 Cal.App.3d 1089, because in that case, the plaintiff sued the lender itself rather than a separate appraiser and because the case was decided prior to *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 (*Bily*) and *Soderberg*, *supra*, 44 Cal.App.4th 1760.  We find these reasons unpersuasive.  Whether the lender conducts the appraisal in house or hires an outside appraiser, the considerations are the same.  The appraisal is ordered by the lender is for its own protections and the borrower has his or her own means of ascertaining the

8

desirability of the property.  We turn now to *Bily* and *Soderberg*.

In *Bily*, *supra*, 3 Cal.4th 370, the court addressed auditor liability to third parties.  It held, inter alia, that "[a]n auditor may . . . be held liable for negligent misrepresentations in an audit report to those persons who act in reliance upon those misrepresentations in a transaction which the auditor intended to influence . . . ." (*Id.* at p. 376.)

The *Bily* court expressed its approval of Restatement Second of Torts section 552, subdivision (b), having to do with the liability of suppliers of information. (*Bily*, *supra*, 3 Cal.4th at p. 408.)  The court stated:  "As the authors of section 552 observe, liability should be confined to cases in which the supplier '*manifests* an intent to supply the information for the *sort of use* in which the plaintiff's loss occurs.'  [Citation.] This follows because the 'risk of liability to which the supplier subjects himself by undertaking to give the information . . . *is vitally affected by the number and character of the persons, and particularly the nature and extent of the proposed transaction.*' [Citation.]  [¶] The 'intent to benefit' language of the Restatement Second of Torts thus creates *an objective standard* that looks to the specific circumstances (e.g., supplier-client engagement and the supplier's communications with the third party) to ascertain whether a supplier has undertaken to inform and guide a third party with respect to *an identified transaction or type of transaction*.  If such a specific undertaking has been made, liability is imposed on the supplier.  If, on the other hand, the supplier 'merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated,' the supplier bears no legal responsibility.  [Citation.]" (*Bily*, *supra*, 3 Cal.4th at pp. 409-410.)

Willemsen believes *Bily*, *supra*, 3 Cal.4th 370 supports his position.  He emphasizes that the AppraisalPacific Defendants knew he was the borrower, inasmuch as the appraisal report referenced him by name and also referenced the purchase agreement, which contained a financing contingency.  Moreover, he says he paid for the appraisal

and a copy of the appraisal is always given to the borrower.

Be that as it may, while the AppraisalPacific Defendants knew that Willemsen was the borrower and that, according to the February 27, 2007 purchase agreement he had no obligation to complete the purchase of the property unless the bank was willing to finance the transaction, that does not mean they knew Willemsen would be relying on the appraisal in making a decision to purchase the property. Rather, a review of the February 27, 2007 purchase agreement would have indicated to the AppraisalPacific Defendants that Willemsen's contingencies based on everything other than the bank's willingness to finance the transaction had expired before the appraisal was even requested by the bank. And where the financing contingency is concerned, just because Willemsen had a right to cancel the purchase if the bank was unwilling to provide satisfactory financing, that did not mean he had a right to cancel if he obtained a copy of the appraisal and did not like its contents. After all, as we have stated previously, he did not negotiate an appraisal contingency.

Furthermore, the AppraisalPacific Defendants did not manifest an intent to supply information for Willemsen's use in determining whether the property was suitable for his purposes. Rather, the appraisal report specifically limited its intended use to the use of the bank. Finally, the purpose of the appraisal report was to aid the bank in determining whether the proposed collateral had a value sufficient to support the contemplated loan, not to assure Willemsen that it was suitable for use as a recycling facility or free from earthquake faults, or to disclose planned roadways to him.

"If competent evidence does not permit a reasonable inference that the [supplier of information] supplied its report with knowledge of the existence of a specific transaction or a well-defined type of transaction which the report was intended to influence, the auditor is not placed on notice of the risks of the . . . engagement. In such cases, summary adjudication will be appropriate because plaintiff will not, as a matter of law, fall within the class of intended beneficiaries." (*Bily*, *supra*, 3 Cal.4th at pp. 414-

10

415.)  Here, the appraisal report demonstrates on its face that the AppraisalPacific Defendants were aware of the contemplated loan transaction and that the appraisal report was intended to influence that transaction.  There is no indication, however, that the AppraisalPacific Defendants were aware that Willemsen hoped to use the appraisal report as an investigational tool upon which to base his decision to approve or reject the property, inasmuch as the purchase agreement did not include an appraisal contingency.

Willemsen disagrees with this analysis.  He claims that *Soderberg*, *supra*, 44 Cal.App.4th 1760 applied *Bily*, *supra*, 3 Cal.4th 370 to appraisers in a manner that supports his position.  In *Soderberg*, a mortgage broker obtained an appraisal of certain real property in order to shop a loan to certain deed of trust investors.  The trial court found the appraiser "'knew that his appraisal was for the purpose of testing the equity for a potential loan'" but that there was no evidence the appraiser was informed of the identity of any particular investor.  (*Soderberg*, *supra*, 44 Cal.App.4th at p. 1768.)  The appellate court held it was error to grant summary adjudication in favor of the appraiser on the negligent misrepresentation cause of action brought by investors who relied on the appraisal.  It stated:  "[V]iewing the evidence most favorably to plaintiffs, [the appraiser] knew that a particular group or class of persons to which plaintiffs belonged—potential investors contacted by [the mortgage broker who ordered the appraisal]—would rely on his report in the course of a specific type of transaction he contemplated—investing in a deed of trust secured by the appraised property.  [Citation.]"  (*Id.* at p. 1771.)  This was so even though the appraisal itself said it was for the purpose of the mortgage broker in its decisionmaking.  (*Id.* at p. 1770.)

While we agree with Willemsen that the court in *Soderberg*, *supra*, 44 Cal.App.4th 1760 applied *Bily*, *supra*, 3 Cal.4th 370 in the appraiser context, we disagree with his argument that *Soderberg*, *supra*, 44 Cal.App.4th 1760 supports an outcome in his favor.  In *Soderberg*, the appraiser issued an appraisal to a mortgage broker with the knowledge and intent that the mortgage broker would distribute it to a class of potential

11

investors who would rely thereon in making their decision to invest or not invest. In the matter before us, however, there is no indication that the AppraisalPacific Defendants issued their appraisal report with the knowledge or intent that Willemsen would rely upon it in deciding whether to buy or not to buy the property, or in ascertaining if earthquake fault lines crossed the property or the city intended to run roads across the property. Rather, they knew and intended that the bank would use the appraisal report in determining whether the property had sufficient value to serve as its collateral.

We turn next to *Mariani*, *supra*, 70 Cal.App.4th 685, the most recent of the cases upon which the trial court in the case before us relied. In *Mariani*, the trial court granted summary adjudication in favor of the defendant auditor on a negligent misrepresentation cause of action. The plaintiffs had guaranteed the debts of a corporation whose financial statements the defendant had audited. (*Id.* at pp. 689, 691, 709.) The appellate court applied the principles enunciated in *Bily, supra,* 3 Cal.4th 370 and affirmed. (*Mariani*, *supra*, 70 Cal.App.4th at pp. 705, 709.) It indicated that the trial court had correctly found a lack of cognizable reliance on the part of the plaintiffs. (*Id.* at pp. 706-707.) It further stated: "The court properly granted summary adjudication on the negligent misrepresentation count of the third amended complaint because [the plaintiffs] did not demonstrate a reasonable inference that [the defendant] intended to influence them in any identifiable transaction or type of transaction." (*Id.* at p. 709.)

Willemsen says *Mariani*, *supra*, 70 Cal.App.4th 685 is distinguishable from the case before us, because he "acted in reliance on the valuation contained in the" appraisal report[3] and because the AppraisalPacific Defendants knew he was the borrower

---

[3]     We note it would be difficult for Willemsen to show that he relied in certain other respects. For example, he complains that the appraisal report failed to disclose the City of San Bernardino's road plans with respect to the property. However, Willemsen himself stated at deposition that he had learned about the future road in May or June 2007, initially in a design review meeting with city officials and thereafter from a city follow-up letter. The appraisal was issued in July.

12

and knew about the terms and conditions of the property purchase "of which their valuation was the single critical factor for the financing contingency." We have already discussed these points. The evidence shows that Willemsen only acted in reliance on the valuation in the sense that he had a financing contingency that permitted him to cancel the deal if he could not obtain satisfactory financing. He did obtain the financing. True, the AppraisalPacific Defendants knew he was the borrower, but they did not intend to influence him in deciding whether to purchase or not purchase the property. The purpose of the appraisal report was to influence the bank in its decision whether to lend or not.

## B.  REQUEST FOR LEAVE TO AMEND:

In the body of his opposition to the motion for summary judgment, Willemsen requested leave to amend his complaint to assert a breach of contract, third party beneficiary cause of action. In conclusory fashion, he stated simply that he sought to assert the cause of action based on the facts already alleged and on *Soderberg*, *supra*, 44 Cal.App.4th 1760. As Willemsen pointed out, leave to amend is liberally granted, even when a summary judgment motion is pending. (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663-1664.)

In opposing the request for leave to amend, the AppraisalPacific Defendants stated that Willemsen had failed to follow proper procedure in including his request in the body of his opposition to the motion for summary judgment. They also said that his request was both untimely and a sham amendment, given that the lawsuit was filed on October 29, 2009, the request was made on December 14, 2011, the trial was set for January 30, 2011, and the new cause of action was not based on any new facts.

At argument, the court denied the request for leave to amend because Willemsen had not made any persuasive argument that he could successfully make a third party beneficiary breach of contract claim.

13

In *Soderberg*, *supra*, 44 Cal.App.4th 1760, the plaintiffs sought leave to amend their complaint to add a breach of contract claim based on third party beneficiary principles. They claimed that the appraiser had breached the contract by overstating the value of the property securing their deed of trust. They asserted that they were third party beneficiaries of a contract between the mortgage broker and the appraiser concerning the preparation of appraisal reports for prospective investors. (*Id.* at p. 1772.)

The court observed: "'The prevailing American rule permits a third party beneficiary under a contract to enforce it. . . . The rule is codified in Civil Code section 1559, which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it." The promise in such a situation is treated as having been made directly to the third party. . . . It is not necessary that an express beneficiary be specifically identified in the contract; he or she may enforce it if he or she is a member of a class for whose benefit the contract was created.' [Citations.]" (*Soderberg*, *supra*, 44 Cal.App.4th at p. 1773.)

The *Soderberg* court observed that the plaintiffs provided evidence indicating they might be able to plead a viable third party beneficiary claim. (*Soderberg*, *supra*, 44 Cal.App.4th at p. 1773.) That being the case, it held that the trial court erred in failing to rule on their request for leave to amend the complaint to state such a claim. (*Id.* at p. 1774.)

As Willemsen sees it, *Soderberg*, *supra*, 44 Cal.App.4th 1760 shows that he should have been granted leave to amend for the same purpose. We disagree. In *Soderberg*, the appraisal was made knowing that the mortgage broker would use it to shop the loan to third party investors who would rely on the appraisal in deciding whether to invest or not. (*Id.* at p. 1771.) Consequently, the plaintiffs fell within the class of persons for whose benefit the contract was made. (*Id.* at pp. 1773-1774.) In contrast, in the case before us, as we have stated before, the person for whose benefit the appraisal was prepared was only the bank, so it could determine whether the collateral satisfied its

14

underwriting concerns. Although the identity of the borrower was known to the AppraisalPacific Defendants, they did not prepare the appraisal for the purpose of aiding Willemsen in deciding whether the property was suitable for his particular purposes.

On another point, we note Willemsen has alleged that while the property was appraised at $1,780,000, it was not in actuality worth that much. However, he only paid $1,600,000. He has not stated either that the property was worth less than $1,600,000 or that the bank has complained there is inadequate security for its loan. Rather, Willemsen complains that the property is worth less than $1,780,000 because the appraisal report failed to take into account an earthquake fault line and the city's plans to build a road. However, there is no indication either that the earthquake fault line and the roadway plans were of concern to the bank or that the AppraisalPacific Defendants intended to provide information on those points to Willemsen for his decisionmaking purposes.

"'If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not.' [Citation.] "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" [Citation.] To satisfy this burden, "'a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"' by clearly stating not only the legal basis for the amendment, but also the factual allegations to sufficiently state a cause of action. [Citation.]" (*Graham*, *supra*, 226 Cal.App.4th at p. 618.) Here, Willemsen failed to meet that burden. Consequently, we hold that the trial court did not abuse its discretion in denying his request for leave to amend.

15

### III

### DISPOSITION

The judgment is affirmed.  The respondents shall recover their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RON WILLEMSEN,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>ANDREW P. MITROSILIS et al.,<br><br>    Defendants and Respondents. | G050075<br><br>(Super. Ct. No. CIVRS912024)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

The National Association of Appraisers and Integra Realty Resources, Inc. have requested that our opinion, filed on September 24, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.