Filed 12/17/14  Calub v. Bank of New York Mellon Trust CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ISIDRO T. CALUB et al., | |
| Plaintiffs and Appellants, | E058124 |
| v. | (Super.Ct.No. RIC10000218) |
| BANK OF NEW YORK MELLON TRUST, CO., NA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Offices of Thomas Gillen and Thomas W. Gillen for Plaintiffs and Appellants.

Houser & Allison, Eric D. Houser and Sara Firoozeh for Defendant and Respondent Ocwen Loan Servicing, LLC.

Law Offices of Mary Jean Pedneau, Mary Jean Pedneau, William R. Larr and Susan S. Vignale for Defendants and Respondents Bruce Kelly and Julie Kelly.

1

Akerman Senterfitt LLP, Justin D. Balser, Maria-Nicolle Beringer, and Jeffrey Rasmussen for Defendants and Respondents Bank of New York Mellon Trust Company, NA, Bank of America, NA and Mortgage Electronic Registration Systems, Inc.

I

INTRODUCTION

Plaintiffs and appellants Isidro Taon Calub and Myrna Vicente Calub (Calub) appeal from a judgment of dismissal entered after the trial court sustained without leave to amend defendants' demurrers to the first amended complaint (FAC). There are three sets of defendants and respondents: 1) Bank of New York Mellon Trust Company, NA, Bank of America, NA, and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively, BOA); 2) Ocwen Loan Servicing, LLC (Ocwen); and 3) Bruce Kelly and Julie Kelly (Kelly).

The Calubs borrowed $393,000 to buy a house in 2001. In March 2007, they refinanced with a $651,000 adjustable rate mortgage (ARM), based on an appraisal of $813,750, and extracting about $250,000 in equity. In March 2009, the Calubs asked for a loan modification and they stopped making mortgage payments after November 2009. The property was sold for $490,000 at a trustee's sale in September 2011. The property was purchased by the Kelly defendants in May 2012. The Calubs contend defendants misrepresented the appraised value of the property and misled them about the possible future appreciated value of the property.

We affirm the trial court's judgment based on the statute of limitations and the absence of any grounds for liability based on representations about the property's value. Other arguments raised by defendants may also have merit but these two points are dispositive. We conclude that the Calubs' claims are time-barred and otherwise fail to state a cause of action.

II

FACTUAL AND PROCEDURAL BACKGROUND

*A. The Original Complaint*

The original complaint was filed in January 2010. The Calubs were represented by W. Dozorsky, who was later disbarred.[1] The Calubs filed a substitution of attorney on April 16, 2012.

The original complaint asserted six causes of action for negligent and reckless misrepresentation; constructive fraud; violation of the covenant of good faith and fair dealing; unfair business practices; accounting; and declaratory relief. The named defendants did not include the Ocwen or Kelly defendants.

The original complaint alleged that defendants knew the Calubs would not be able to repay the ARM loan unless they refinanced. Additionally, the Calubs alleged that, because defendants "repackaged" the Calub loan, they had no standing to proceed with

---

[1] http://members.calbar.ca.gov/fal/Member/Detail/98515 (as of December 1, 2014).

3

foreclosure. Finally, the Calubs alleged the ARM loan was subject to negative amortization, preventing the Calubs from repaying the loan. The original complaint made no allegations about defendants misrepresenting the appraised value or the future appreciated value of the property.

Defendants demurred to the original complaint and the Calubs filed a notice of nonopposition. The trial court sustained the demurrer with leave to amend.

## B. The FAC

After various proceedings and obtaining a new lawyer, the Calubs filed their FAC on July 17, 2012, asserting three causes of action for fraud, violations of the unfair competition law (UCL), and declaratory relief. The foundation for their claims is "2 representations": 1) that the BOA defendants misrepresented the value of the property based on a false appraisal of $813,750 when it was only worth $500,000 and 2) that the ARM would allow the Calubs to make low initial payments and then refinance the property before the ARM payments increased. The Calubs stopped making payments after November 2009.

## C. The Demurrers

All three sets of defendants demurred. The grounds for BOA's demurrer were the failure to state a claim and the statute of limitations. Eventually, the trial court sustained the demurrers without leave to amend. The grounds for the ruling were a failure to state a claim and the inability to amend.

4

## III

## DISCUSSION

At the outset, we observe there are no allegations in the FAC against the Kelly defendants, the subsequent purchasers in 2012, and almost none against Ocwen, other than it briefly acted as a loan servicer in 2010. The "2 representations" were allegedly made in March 2007, years before Ocwen was involved, and more than five years before the Kelly defendants purchased the property after the foreclosure sale. There is no factual basis whatsoever for stating a claim against these defendants. The Calubs do not even mention Ocwen or the Kellys in their appellate brief. Instead, we focus our discussion on the BOA defendants whose arguments are also dispositive as to the other defendants.

In conducting our review, we rely heavily on two recent cases—*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462 (*Cansino*) and *Graham v. Bank of America, NA* (2014) 226 Cal.App.4th 594 (*Graham*)—in which similarly-situated plaintiffs are represented by the same attorney as here, the Law Offices of Thomas Gillen. Gillen also represents two other sets of plaintiffs in appeals pending in this court—*Davis v. Wells Fargo Bank, NA, et al.* (E058912) and *Peralta v. Bank of America Corp., et al.* (E058190). In these four other cases, the plaintiffs make the same unsuccessful arguments as we consider here.

*A.  Standard of Review*

We independently review the trial court's order sustaining a demurrer.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  "We assume the truth of all facts properly pleaded, and we accept as true all facts that may be implied or reasonably inferred from facts expressly alleged, unless they are contradicted by judicially noticed facts.  [Citations.]  Inconsistent general statements are modified and limited by specific factual allegations.  [Citation.]  We give the complaint a reasonable interpretation and we read it in context.  [Citation.]  But we do not assume the truth of contentions, deductions or conclusions of fact or law.  [Citation.]  We will affirm an order sustaining a demurrer on any proper grounds, regardless of the basis for the trial court's decision.  [Citations.]

"When the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion.  [Citation.]  The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment.  [Citation.]  The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal."  (*Cansino, supra*, 224 Cal.App.4th at p. 1468.)

*B.  The Statute of Limitations*

The loan refinance occurred in March 2007.  The Calubs asked to renegotiate the loan in March 2009 but they stopped paying after November 2009.  They filed the original complaint in January 2010 and the FAC in July 2012.  The allegations of the

FAC are entirely different than the allegations of the original complaint. There is nothing in the original complaint about the "2 representations" which are the basis for the FAC. Therefore, the Calubs cannot argue that the FAC filed in July 2012 relates back to the complaint filed in January 2010. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408-409; *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th, 409, 416.)

The relevant dates are March 2007 and July 2012 for purposes of applying the statute of limitations. The statute of limitations for fraud is three years (Code Civ. Proc., § 338, subd. (d)) and for UCL claims is four years. (Bus. & Prof. Code, § 17208.) To the extent that the Calubs base their complaint on two purported misrepresentations made to them in March 2007, their claims are barred because they were not filed by March 2010 or March 2011. To the extent, plaintiffs rely on the discovery rule to toll the statute of limitations, they have not offered sufficient allegations for it to apply.

The discovery rule is an exception to the accrual of the statute of limitations: "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160.) In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' (*Ibid.*)" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.)

7

In discussing a similar case involving fraud based on alleged misrepresentations made to homeowners by Bank of America during a mortgage refinance, the Sixth District in *Cansino* analyzed the limitations issue in detail:

"Because the discovery rule operates as an exception to the statute of limitations, 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.' (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 (*Hobart*).) To excuse failure to discover the fraud within three years after its commission, a plaintiff also must plead 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.' (*Ibid.*; see *Johnson v. Ehrgott* (1934) 1 Cal.2d 136, 137.) To that end, a plaintiff must allege facts showing 'the time and surrounding circumstances of the discovery and what the discovery was.' (*Hobart,* at p. 441.) Conclusory allegations will not withstand a demurrer. (*Fox* [*v. Ethicon Endo-Surgery, Inc.*]*, supra*, 35 Cal.4th at p. 808.) The discovery-related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner. (*Davis v. Rite-Lite Sales Co.* (1937) 8 Cal.2d 675, 681.)" (*Cansino, supra,* 224 Cal.App.4th at p. 1472.)

The *Cansino* court held a second amended complaint was deficient when "[p]laintiffs alleged that the misrepresentations on which their fraud claim was based occurred in July 2005. They filed their initial complaint six years later, in July 2011. The

8

second amended complaint alleged that '[t]he falsity of the [two] Representations [was] not discovered until sometime in 2010 when plaintiffs realized that their home was now valued at $350,000 to $400,000,' and that the falsity of the two representations "'could [not] . . . be discovered by the diligent attention of plaintiffs.'

"These allegations are insufficient to establish the timeliness of plaintiffs' fraud claim.  As we have already explained, plaintiffs' realization that their home, in 2010, was worth '$350,000 to $400,000' does not explain how plaintiffs made the discovery or how it demonstrates that the 2005 appraisal was a misrepresentation.  '[S]ometime in 2010' also is vague.  Without knowing the specifics of plaintiffs' discovery, the trial court could not determine when plaintiffs had actual or presumptive knowledge of the alleged misrepresentations and whether plaintiffs should have made the discovery sooner." (*Cansino, supra,* 224 Cal.App.4th at p. 1473.)

In the case before us, the Calubs make the wholly conclusory allegation in the FAC that they "only learned of the true facts . . . within the last three years."  They also allege they asked for a loan modification in March 2009, "pleading hardship, loss of value in the property, medical expenses, and other hardships, and the unfairness of the new loan."  Opposing the demurrers, they argued discovery was not made until 2009-2010 when they sought a loan modification.  On appeal, they argue they were unsophisticated borrowers and that it is reasonable to infer that they did not discover the fraud until November 2009 when they stopped paying the mortgage.  Like the *Cansino* plaintiffs, the Calubs assert a substantial amount of time would have to pass before

9

defendants' fraud could be detected because they had "'no reason to question the value of their home until the time came to make a decision regarding refinancing." (*Cansino, supra,* 224 Cal.App.4th at p. 1473.)

To cite *Cansino* again, "[t]hese conclusory arguments miss the point. The basis of the discovery must be pleaded with specificity, and the [FAC] falls short of this pleading requirement." (*Cansino, supra,* 224 Cal.App.4th at p. 1473.) Without specific facts relating to discovery—which the Calubs apparently cannot supply—the FAC cannot be amended and is time-barred after March 2010.

The same analysis applies to the UCL claims which were time-barred after March 2011. The statute of limitations for a UCL violation is four years. (Bus. & Prof. Code, § 17208.) The Calubs failed to plead facts to invoke the discovery rule to establish the timeliness of their claim within four years of March 2007. (*Hobart, supra*, 26 Cal.2d at p. 443.) Like the fraud claim, the UCL claim fails as untimely given the statute of limitations. (*Cansino, supra,* 224 Cal.App.4th at p. 1475.)

## C. *Value of the Property*

Even if the fraud and UCL claims were not time-barred, the Calubs cannot support their claims with allegations that defendants misrepresented the value of the property at the time of the refinance, based on an inflated appraisal, and also misrepresented the future value of the property and the Calubs' eventual ability to refinance the property. The same claims were made by the *Cansino* plaintiffs. (*Cansino, supra*, 224 Cal.App.4th

10

at p. 1469.)  The *Cansino* court concluded that defendants could have no liability for representations about the property's value.  (*Id.* at pp. 1469-1472.)

The Calubs allege the appraised value of the property was $813,750 in March 2007.  The allegations do not identify who prepared the appraisal or made the representations:  "These allegations are deficient under *Lazar* because they do not specify ""'how, when, where, to whom, and by what means the representations were tendered.'" [Citation.]'   (*Lazar* [*v. Superior Court* (1996)] 12 Cal.4th [631,] 645.)"  (*Cansino, supra,* 224 Cal.App.4th at p. 1471.)  Absent such allegations, defendants cannot know how to dispute plaintiffs' claims effectively.

The FAC also fails to allege how the March 2007 appraisal misrepresented the then-current market value of the property or how defendants knew it was a misrepresentation.  Although the Calubs contend the property was worth $500,000 in July 2012, the allegation does not support the Calubs' assertion that the 2007 appraisal was a misrepresentation.  (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959 [alleging fraudulent appraisal based on using outdated home sales].)

Following *Cansino*, the appellate court in San Diego reached the same conclusions about appraised value:

"Statements regarding the appraised value of the property are not actionable fraudulent misrepresentations.  Representations of opinion, particularly involving matters of value, are ordinarily not actionable representations of fact.  [Citations.]  A representation is an opinion "'if it expresses only (a) the belief of the maker, without

11

certainty, as to the existence of a fact; or (b) his judgment as to quality, value . . . or other matters of judgment.'" [Citation.]

"Appraisals are 'an opinion as to the market value' of a property prepared by a qualified independent appraiser. (12 C.F.R. §§ 34.42(a) (2013), see *id.,* § 34.45 (2013); 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 498, p. 576.) It is an estimate of the price a buyer would be willing to pay and a seller would be willing to accept at a given time based upon market conditions.

"An appraisal is performed in the usual course and scope of the loan process to protect the *lender's* interest to determine if the property provides adequate security for the loan. Since the appraisal is a value opinion performed for the benefit of the lender, there is no representation of fact upon which a buyer may reasonably rely. 'While it [is] foreseeable the appraisal might be considered by plaintiff in completing the loan transaction, the foreseeability of harm [is] remote. Plaintiff [is] in as good a position as . . . defendant to know the value and condition of the property. One who seeks financing to purchase real property has many means available to assess the property's value and condition, including comparable sales, advice from a realtor, independent appraisal, contractors' inspections, personal observation and opinion and the like. . . . Stated another way, the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain, i.e., not to insure the success of the investment.' (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231

12

Cal.App.3d 1089, 1099.)" (*Graham, supra,* 226 Cal.App.4th at pp. 606- 607; see

*Willemsen v. Mitrosilis* (2014) 230 Cal.App.4th 622, 628-632.)

The Calubs also do not allege how defendants misrepresented the future value of the property and they argue that the issue of future value constitutes fact or opinion that is not appropriate for resolution at the demurrer stage of proceedings. However, no authority holds that a prediction about future market conditions constitutes an actionable misrepresentation: "The law is well established that actionable misrepresentations must pertain to past or existing material facts. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 835.) Statements or predictions regarding future events are deemed to be mere opinions which are not actionable. (*Neu-Visions Sports, Inc. v. Soren/McAdams/Bartells* (2000) 86 Cal.App.4th 303, 309-310; *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 744, pp. 1123-1125.) [¶] . . . [¶]

"Like acts of nature and their consequences, the future state of a financial market is unknown. Any future market forecast must be regarded not as fact but as prediction or speculation. (*Gentry v. eBay, Inc., supra*, 99 Cal.App.4th at p. 835.) . . . As a matter of law, defendants' alleged representations—that plaintiffs' property would continue to appreciate in the future and that plaintiffs could then sell or refinance their home based on this forecasted future appreciation—are not actionable in fraud." (*Cansino, supra,* 224 Cal.App.4th at pp. 1469-1471.)

13

Here the Calubs seek to rely on statements that are opinions about future events, not factual representations: "Predictions about a buyer's real estate investment or the fair market value for property in the future are not actionable misrepresentations." (*Graham, supra,* 26 Cal.App.4th at p. 607.) A borrower and lender are not in a fiduciary relationship. As Shakespeare's Merchant of Venice learned, a lender pursues "its own economic interests in lending money." (*Perlas* [*v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th [429,] 436.) A lender does not protect the success of a borrower's investment. (*Nymark v. Heart Fed. Savings & Loan Assn., supra*, 231 Cal.App.3d at p. 1096.) Borrowers must be responsible for their own economic decisions. (*Perlas*, at p. 436.)

Finally, even if there were an actionable representation or omission, the Calubs must plead and prove they sustained damage as a result of the concealment or suppression of fact. (*Bank of America Corp.* [*v. Superior Court* (2011)] 198 Cal.App.4th [862,] 873.) The Calubs do not make that showing here. They allege the representations or omissions were made with an intent to defraud them by inducing them to refinance their home with an ARM loan, which "could be quickly marketed to international investors and which could bring immediate revenue to defendants."

However, the Calubs do not allege a sufficient nexus between the purported misrepresentations or concealment and their alleged economic harm: "[H]omeowners who did not obtain loans from [defendants] likewise suffered a decline in property values, a decline in their home equity, and reduced access to their home equity lines of credit.

14

Irrespective of whether a homeowner obtained a loan from [defendants], or obtained a loan through another lender, or whether a homeowner owned his or her home free and clear, all suffered a loss of home equity due to the generalized decline in home values." (*Bank of America Corp. v. Superior Court, supra,* 198 Cal.App.4th at p. 873.)

As in *Graham*, the damages the Calubs allege they incurred are the result of a decline in the overall market. It is now universally recognized that, in 2007, the California real estate market was over-valued but the Calubs do not allege they could have or would have obtained a better loan from a different lender absent the alleged representations regarding the appraisal. They received the benefit of their bargain by refinancing and obtaining over $250,000. The foreclosure sale was caused by the Calubs' default, not defendants' conduct. Therefore, the Calubs have not sufficiently pleaded a causal connection between any damages and any actionable fraud by defendants.

*D. UCL Claims*

For the same reasons, the Calubs cannot state any UCL claims. California UCL law broadly prohibits three types of unfair competition—acts or practices which are unlawful, fair or fraudulent—to protect the public from fraud, deceit, and unlawful conduct. (Bus. & Prof. Code, § 17200; *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1350; *Graham, supra,* 226 Cal.App.4th at pp. 609-614; *Cansino, supra,* 224 Cal.App.4th at pp. 1473-1475.)

15

The FAC alleges that defendants violated the UCL in three ways. In paragraph 44 of the FAC, the Calubs allege that the two misrepresentations constitute an unlawful business practice. This allegation fails to state a claim for relief due to lack of specificity, in the same way plaintiffs' fraud claim based on the same misrepresentations is deficient. (See *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 178; *Cansino, supra,* 224 Cal.App.4th at p. 1474.)

In paragraphs 47 and 48 of the FAC, the Calubs allege "Defendants' Lending Personnel" and "'Defendant financial institutions'" violated the UCL by "colluding" with others in the housing industry to inflate the value of real estate "to entice plaintiffs and others into 'top loaded' or 'leveraged' homes," and then later refusing to refinance based on the true value of the homes. These allegations contradict the Calubs' other allegations that they bought their home in 2001 and refinanced the mortgage in 2007, borrowing against the value of their home. The Calubs were not "enticed" to purchase a "top loaded" or "leveraged" home. This allegation cannot support a UCL claim.

On appeal, the Calubs argue that their injury resulted from the failure of their home to appreciate, as defendants represented it would in 2007. The FAC demonstrates that the Calubs accepted the loan terms, relying on the appraisal and assurances that their home would continue to appreciate. The Calubs do not allege, however, that their injury resulted from any misstatements contained on the face of the loan document. Instead, although the indebtedness could increase due to negative amortization, the Calubs

16

gambled the home's value would increase in a corresponding way, allowing them to refinance when necessary.

For the first time on appeal, the Calubs list a raft of purported UCL violations which did appear in the FAC. However, the Calubs do not explain how defendants may be liable when plaintiffs cannot base their claims on the 2007 appraisal or representations about the future value of the property.

*E. Declaratory Relief*

The third cause of action seeks a declaration regarding the applicability of the National Mortgage Settlement (NMS) Consent Judgment to the instant dispute.[2] Declaratory relief is available to "[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . in cases of actual controversy relating to the legal rights and duties of the respective parties. . . ." (Code Civ. Proc., § 1060; *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728.) Once the court determines an "actual controversy" exists, the court has discretion under Code of Civil Procedure section 1061 to refuse to make a declaration of rights and duties "including a determination of any question of construction or validity arising under a written instrument or contract, 'where its declaration or determination is not necessary or proper at the time under all the

---

[2] We grant BOA's motion for judicial notice filed October 11, 2013. (Evid. Code, §§ 452 and 459; Cal. Rules of Court, rule 8.252.)

17

circumstances.'" (*Maguire,* at pp. 728, 730.) The trial court's determination is reviewed on appeal for abuse of discretion. (*Orloff v. Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 485.)

The NMS, however, does not apply because the foreclosure of the Calubs' property in September 2011 predated the NMS in March 2012. Furthermore, the Calubs have no standing to enforce the NMS consent judgment. "'[I]ndividual borrowers are merely incidental beneficiaries of the National Mortgage Settlement, and so have no right to bring third-party suits to enforce the Consent Judgment.' (*Rehbein v. CitiMortgage, Inc.* (E.D.Va. 2013) 937 F.Supp.2d 753, 762; *Jurewitz v. Bank of America, NA* (S.D.Cal. 2013) 938 F.Supp.2d 994, 998.)" (*Graham, supra,* 226 Cal.App.4th at pp. 615-616.)

## F.  Leave to Amend

The Calubs seek a third opportunity to plead claims for fraud, violations of the UCL and declaratory relief. They do not demonstrate how they can amend the FAC or change its legal effect: "'The assertion of an abstract right to amend does not satisfy this burden.'" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95; *Cansino, supra,* 224 Cal.App.4th at p. 1475; *Graham, supra,* 226 Cal.App.4th at p. 619.)

We perceive no reasonable possibility that the Calubs could cure the defects of the FAC by amendment: "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Maxton v. Western States Metals, supra*, 203 Cal.App.4th at p. 95; *Cansino, supra,* 224 Cal.App.4th at p. 1475; *Graham, supra,* 226 Cal.App.4th at p. 618; see *Willemsen v. Mitrosilis, supra,* 230 Cal.App.4th at p. 634.) The trial court did not

18

abuse its discretion in denying leave to amend. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

IV

DISPOSITION

The Calubs cannot successfully state a claim or amend the first amended complaint. The trial court did not abuse its discretion in sustaining defendants' demurrers without leave to amend.

We affirm the judgment. In the interests of justice, the parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


McKINSTER

Acting P. J.


MILLER

J.

19